# EXHIBIT 3

# EXHIBIT 3

# Nevada K, LLC Defined Benefit Pension Plan

## CENSUS INFORMATION REQUEST

### For the period 1/01/2008 to 12/31/2008

Enter data for each individual employed during any part of the year.  Use separate form to report additional employees not listed.
See detailed instructions provided.

| Soc. Sec. No. | Participant Name | Gender | Date of Birth | Date of Hire | Date of Termination | Compensation Received During Plan Year | Hours of Service check one -499  500-999  1000+ |
|---|---|---|---|---|---|---|---|
| ▓▓▓▓ | Simon K. Shakib | M | 01/01/99 | 01/01/99 | | | ☐ ☐ ✓ |
| ▓▓▓▓ | Zanna M. Shakib | F | ▓▓▓ | 01/01/99 | | | ☐ ☐ ✓ |

I certify that the employee information contained above is accurate and that the "compensation" amounts are consistent with the definition of
compensation in the plan document

Signature of Employer/Plan Administrator

Date :

Page 1

SHAKIB000105

Nevada K, LLC Defined Benefit Pension Plan

CENSUS INFORMATION REQUEST

For the period 1/01/2007 to 12/31/2007

Enter date for each individual employed during any part of the year. Use separate form to report additional employees not listed.
See detailed instructions provided.

| Soc. Sec. No. | Participant Name | Gender | Date of Birth | Date of Hire | Date of Termination | Compensation Received During Plan Year | Hours of Service check one -499 500-999 1000+ |
|---|---|---|---|---|---|---|---|
| ███ 6. | Simon K. Shakib | M | ███ | 01/01/99 | N/A | * | ☐ ☐ ☒ |
| ███ | Zanna M. Shakib | F | ███ | 01/01/99 | N/A | * (Schedule-K) | ☐ ☐ ☒ |

\* NEVADA K, LLC IS UNDER EXTENSION AND WILL BE COMPLETED BY 8/15/08.
K1 FORMS WILL BE SUBMITTED UPON DISPATCH OF THE TAX RETURNS BY THAT DATE.

I certify that the employee information contained above is accurate and that the "compensation" amounts are consistent with the definition of
compensation in the plan document

Signature of Employer/Plan Administrator:
SIMON K. SHAKIB
Date: JUNLY 30, 2008

Page 1

SHAKIB000104

# EXHIBIT 4

# EXHIBIT 4

**PLEDGE AND SECURITY AGREEMENT**

THIS PLEDGE AND SECURITY AGREEMENT (this "Agreement") is dated as of July 30th 2007, by Nevada K. LLC and Simon Shakib ("Pledgors"), and Bank of Nevada, a Nevada corporation ("Lender").

**RECITALS**

A.       Lender has agreed to make a loan to Windmill Market, LLC, a Nevada limited liability company (collectively, "Borrower"), in the principal amount of $7,000,000 (the "Loan"), which Loan will be evidenced by a Promissory Note of even date herewith from Borrower to Lender in the amount of the Loan (the "Note").

B.       In connection with the Loan, Pledgor will enter into a Guaranty Agreement in favor of Lender to guaranty Borrower's obligations under the Loan (the "Guaranty").

C.       As a condition to making the Loan, Lender requires Pledgor to grant to Lender a security interest in and to certain Collateral to secure the Obligations (each as defined below).

NOW, THEREFORE, in consideration of the making of the Loan and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Pledgor and Lender hereby agree as follows:

**Article 1**
**Pledge**

1.1       Pledge.  As security for the prompt and full performance of Guarantor's obligations under the Guaranty (collectively, the "Obligations"), Pledgor hereby pledges to Lender, its successors and its assigns, and hereby grants to the Lender, its successors and its assigns, a security interest in all of its right title and interest in and to the following (collectively, the "Collateral"):

(a)       the certificate of deposit accounts numbers  3400016756   on deposit with Lender and all successor and replacement accounts, regardless of the numbers of such accounts or the offices at which such accounts are maintained (the "Accounts") and all rights of Pledgor in connection with the Accounts; and

(b)       all proceeds of any of the foregoing no matter how deliverable to Pledgor (collectively, "Distributions").

TO HAVE AND TO HOLD the Collateral, together with all right, title, interest, powers, privileges and preferences pertaining or incidental thereto, unto Lender, its successors and its assigns, forever, subject, however, to the terms, covenants and conditions hereinafter set forth.

1.2       Distributions.  All Distributions that are received by Pledgor shall be received in trust for the benefit of Lender, shall be segregated from other property or funds of Pledgor and shall be forthwith delivered to Lender in the same form as so received.  Any and all money and other property paid over to or received by Lender pursuant to the provisions of this Section 1.2 shall be retained by Lender in an account to be established by Lender upon receipt of such money or other property.  After all Defaults have been cured or waived in writing by Lender, Lender shall, within five (5) business days after

all such Defaults have been cured or waived, repay to Pledgor all cash Distributions that Pledgor would otherwise be permitted to retain, but only to the extent such cash Distributions remain in such account.

1.3     Security Agreement.

1.3.1     UCC Security Agreement.     This Agreement shall constitute a "security agreement" within the meaning of the Nevada Uniform Commercial Code (the "UCC"). Pledgor hereby grants to Lender, as security for the Obligations, a security interest in the Collateral to the full extent that the Collateral may be subject to the UCC. If a Default shall occur and be continuing, Lender, in addition to any other rights and remedies which it may have under the Note, shall have and may exercise immediately and without demand, any and all rights and remedies granted to a secured party upon default under the UCC. Any notice of sale, disposition or other intended action by Lender with respect to the Collateral given to Pledgor in accordance with the provisions hereof at least ten (10) business days prior to such action, shall constitute reasonable notice to Pledgor. The proceeds of any disposition of the Collateral, or any part thereof, may be applied by Lender to the payment of the Obligations in such priority and proportions as Lender in its discretion shall deem proper.

1.3.2     Financing and Continuation Statements.     Pledgor hereby authorizes Lender to file with the appropriate public office any financing, continuation or other statements in connection with Pledgor's grant of a security interest to Lender in the Collateral covered by this Agreement.

**Article 2**
**Representations, Warranties And Covenants**

2.1     Representations and Warranties.     Pledgor represents, warrants and covenants to and with Lender that:

(a)     Pledgor owns all of the Collateral;

(b)     Pledgor will not withdraw funds from the Accounts or close the Accounts until such time as this Pledge shall be of no further force or effect;

(c)     except for the security interest granted hereunder, Pledgor (i) is and will at all times continue to be the direct owner, beneficially and of record, of the Accounts, (ii) holds the same free and clear of all liens, pledges or other security interests except as may be created under this Agreement, and (iii) will make no assignment, pledge, hypothecation or transfer of, or create any security interest in, the Collateral, other than pursuant hereto;

(d)     no portion of the Collateral is or will be subject to any option, right of first refusal or contractual restriction of any nature that might prohibit, impair, delay or otherwise affect the pledge of such Collateral hereunder, the sale or disposition of the Collateral pursuant hereto after the occurrence of a Default or the exercise by Lender of its rights and remedies hereunder; and

(e)     Pledgor has the power and authority to pledge the Collateral pledged by it hereunder in the manner hereby done or contemplated.

**Article 3**
**Remedies**

3.1     Lender's Rights after Default.     Upon the occurrence of any default hereunder that is not cured by Pledgor within five (5) days after written notice from Lender, or any default under the

Guaranty that is not cured within the time period required in the Guaranty (such uncured default being a "Default" hereunder) or waived in writing by the Lender, Lender shall have all remedies available to Lender at law or in equity, including, without limitation, the right to offset funds owed to Lender by Guarantor against the Accounts and remedies provided to a secured party under the UCC.

## Article 4
### Miscellaneous

4.1     Security Interest Absolute.  All rights of Lender hereunder, the security interests granted hereunder and all obligations of Pledgor hereunder shall be absolute and unconditional irrespective of (a) any lack of validity or enforceability of the documents executed by Borrower or Guarantor in connection with the Loan, including, without limitation, the Guaranty (collectively, the "Loan Documents"), any agreement with respect to any of the Obligations or any other agreement or instrument relating to any of the foregoing, (b) any change in the time, manner or place of payment of, or in any other term of, all or any of the Obligations, or any other amendment or waiver of or any consent to any departure from the Loan Documents or any other agreement or instrument, (c) any exchange, release (including failure to perfect or preserve the perfection or priority of any lien) or non-perfection of any lien on other collateral, or any release or amendment or waiver of or consent under or departure from any guarantee, securing or guaranteeing all or any of the Obligations, (d) any action by Lender that might otherwise operate as a discharge of any of the Obligations under the UCC, or (e) any other circumstance which might otherwise constitute an offset, counterclaim or defense available to, or a discharge of, Pledgor in respect of the Obligations or in respect of this Agreement (other than the payment in full of all the Obligations by Pledgor).

4.2     Further Assurances.  Pledgor agrees that at any time, and from time to time, at the expense of Pledgor, Pledgor shall promptly execute and deliver, or cause to be executed and delivered, all assignments, instruments, powers, proxies and documents and take all further action that may be necessary or desirable, or that Lender may reasonably request, in order to perfect and protect any security interest granted or purported to be granted hereby, to enable Lender to exercise and enforce its rights and remedies hereunder and to carry out the provisions and purposes hereof.

4.3     Survival of Agreement.  All covenants, agreements, representations and warranties made by Pledgor herein and in the certificates or other instruments prepared or delivered in connection with or pursuant to this Agreement or the Loan Documents shall be considered to have been relied upon by Lender and shall survive the termination of the Loan and continue in full force and effect as long as any of the Obligations remains outstanding and unpaid.

4.4     Binding Effect.  All covenants, promises and agreements by or on behalf of Pledgor and Lender that are contained in this Agreement shall bind and inure to the benefit of their respective successors and assigns, except that Pledgor shall not have the right to assign its rights hereunder or any interest herein or in the Collateral, or any part thereof (and any such attempted assignment shall be void), or otherwise pledge, encumber or grant any option with respect to the Collateral, or any part thereof, or any cash or property held by Lender as Collateral under this Agreement except as expressly provided in this Agreement or the other Loan Documents.

4.5     Termination.  This Agreement and the security interests granted hereby shall terminate when all the obligations under the Loan have been paid in full, or upon the stabilization of the Improvements (as defined in the Loan Documents) as determined by Lender.

4.6     Amendment.  This Agreement may not be amended or modified except by a writing signed by each of the parties hereto.

4.7     Notices.  Any and all notices and demands by either party hereto to the other party, required or desired to be given hereunder shall be delivered pursuant to the terms of the Loan Agreement (notices to Pledgor to be sent to Borrower's address set forth in such agreement).

4.8     Applicable Law.  This Agreement shall be governed by and construed in accordance with the laws of the State of Nevada.  The parties hereby submit to personal jurisdiction in the State of Nevada in any suit, action or proceeding arising out of this Agreement and agree that any state or federal courts in Clark County, Nevada, are the proper venue for any such suit, action or proceeding arising under this Agreement.  The parties irrevocably waive any objection that any of them may have at any time to the laying on venue of any suit, action or proceeding arising out of or relating to this Agreement brought in any such court and irrevocably waive any claim that any such suit, action or proceeding brought in any such court has been in an inconvenient forum.

SIGNATURE PAGE FOLLOWS.

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as of the day and year first above written.

**PLEDGOR:**

Simon Shakib, Manager of Nevada K. LLC

**PLEDGOR:**

Simon Shakib

**LENDER:**

Bank of Nevada,
a Nevada corporation

By:

Name:

Title: SVP

Signature Page
Pledge Agreement
Page S-1

SCHEDULE 1

Financing Statement (continued)
Name of Debtor:  Windmill Market, LLC, a Nevada limited liability company
Name of Secured Party:  Bank of Nevada

Item No. 4:

All of Debtor's right, title and interest now or hereafter acquired in and to:

(a) the real property described in Exhibit A which is attached hereto and incorporated herein by reference (the "Land") together with:  (i) any and all buildings, structures, improvements, alterations or appurtenances now or hereafter situated or to be situated on the Land (collectively the "Improvements"); and (ii) all right, title and interest of Debtor, now owned or hereafter acquired, in and to (1) all common area and other use rights, streets, roads, alleys, tenements, hereditaments, easements, rights-of-way, licenses, rights of ingress and egress, vehicle parking rights and public places, existing or proposed, abutting, adjacent, used in connection with or pertaining or appurtenant to any of the Land or the Improvements; (2) any strips or gores between the Land and abutting or adjacent properties; (3) all options to purchase the Land or the Improvements or any portion thereof or interest therein, and any greater estate in the Land or the Improvements; and (4) all water and water rights, shares of stock evidencing water rights, timber, crops and mineral interests on or pertaining to the Land (the Land, Improvements and other rights, titles and interests referred to in this clause (a) being herein sometimes collectively called the "Premises");

(b) all fixtures, equipment, systems, machinery, furniture, furnishings, appliances, inventory, goods, building and construction materials, supplies, and articles of personal property, of every kind and character, tangible and intangible (including software embedded therein), now owned or hereafter acquired by Debtor, which are now or hereafter attached to or situated in, on or about the Land or the Improvements, or used in or necessary to the complete and proper planning, development, use, occupancy or operation thereof, or acquired (whether delivered to the Land or stored elsewhere) for use or installation in or on the Land or the Improvements, and all renewals and replacements of, substitutions for and additions to the foregoing (the properties referred to in this clause (b) being herein sometimes collectively called the "Accessories," all of which are hereby declared to be permanent accessions to the Land);

(c) all (i) plans and specifications for the Improvements; (ii) Debtor's rights, but not liability for any breach by Debtor, under all commitments (including any commitments for financing to pay any of the Secured Indebtedness, as defined in the Deed of Trust (hereinafter defined)), insurance policies, (or additional or supplemental coverage related thereto, including from an insurance provider meeting the requirements of the Loan Documents or from or through any state or federal government sponsored program or entity), Swap Transactions (as hereinafter defined), contracts and agreements for the design, construction, operation or inspection of the Improvements and other contracts and general intangibles (including but not limited to payment intangibles, trademarks, trade names, goodwill, software and symbols) related to the Premises or the Accessories or the operation thereof; (iii) deposits and deposit accounts arising from or related to any transactions related to the Premises or the Accessories (including but not limited to Debtor's rights in tenants' security deposits, deposits with respect to utility services to the Premises, and any deposits, deposit accounts or reserves hereunder or under any other Loan Documents (hereinafter defined) for taxes, insurance or otherwise), rebates or refunds of impact fees or

## SCHEDULE 1

Financing Statement (continued)
Name of Debtor: Windmill Market, LLC, a Nevada limited liability company
Name of Secured Party: Bank of Nevada

other taxes, assessments or charges, money, accounts (including deposit accounts), instruments, documents, promissory notes and chattel paper (whether tangible or electronic) arising from or by virtue of any transactions related to the Premises or the Accessories, and any account or deposit account from which Borrower may from time to time authorize Holder to debit and/or credit payments due with respect to the Loan or any Swap Transaction, all rights to the payment of money from Holder under any Swap Transaction, and all accounts, deposit accounts and general intangibles, including payment intangibles, described in any Swap Transaction; (iv) permits, licenses, franchises, certificates, development rights, commitments and rights for utilities, and other rights and privileges obtained in connection with the Premises or the Accessories; (v) leases, rents, royalties, bonuses, issues, profits, revenues and other benefits of the Premises and the Accessories; (vi) as-extracted collateral produced from or allocated to the Land including, without limitation, oil, gas and other hydrocarbons and other minerals and all products processed or obtained therefrom, and the proceeds thereof; and (vii) engineering, accounting, title, legal, and other technical or business data concerning the Property which are in the possession of Debtor or in which Debtor can otherwise grant a security interest; and

(d) all (i) accounts and proceeds (cash or non-cash and including intangibles) of or arising from the properties, rights, titles and interests referred to above in this Section 1.3, including but not limited to proceeds of any sale, lease or other disposition thereof, proceeds of each policy of insurance (or additional or supplemental coverage related thereto, including from an insurance provider meeting the requirements of the Loan Documents or from or through any state or federal government sponsored program or entity) relating thereto (including premium refunds), proceeds of the taking thereof or of any rights appurtenant thereto, including change of grade of streets, curb cuts or other rights of access, by condemnation, eminent domain or transfer in lieu thereof for public or quasi-public use under any law, and proceeds arising out of any damage thereto; (ii) all letter-of-credit rights (whether or not the letter of credit is evidenced by a writing) Debtor now has or hereafter acquires relating to the properties, rights, titles and interests referred to herein; (iii) all commercial tort claims Debtor now has or hereafter acquires relating to the properties, rights, titles and interests referred to in this Section 1.3; and (iv) other interests of every kind and character which Debtor now has or hereafter acquires in, to or for the benefit of the properties, rights, titles and interests referred to above in this Section 1.3 and all property used or useful in connection therewith, including but not limited to rights of ingress and egress and remainders, reversions and reversionary rights or interests; and if the estate of Debtor in any of the property referred to above in this Section 1.3 is a leasehold estate, this conveyance shall include, and the lien and security interest created hereby shall encumber and extend to, all other or additional title, estates, interests or rights which are now owned or may hereafter be acquired by Debtor in or to the property demised under the lease creating the leasehold estate;

As used herein, the terms "accounts," "chattel paper," "documents," "equipment," "general intangibles," "goods," "instruments" and "inventory" have the meanings provided by the Nevada Uniform Commercial Code on the date hereof.

Concurrently with signing this financing statement, Debtor, as Trustor, is executing for the benefit of Secured Party, as Beneficiary, a Deed Of Trust, Assignment of Rents and Leases, Security Agreement and Financing Statement (the "Deed of Trust"), encumbering certain property as therein described. The

## SCHEDULE 1

Financing Statement (continued)
Name of Debtor:  Windmill Market, LLC, a Nevada limited liability company
Name of Secured Party:  Bank of Nevada

filing of this financing statement shall not be construed to derogate from or impair the lien or provisions of the Deed of Trust with respect to any property described in it which is real property.  The intention of Debtor and Secured Party is that everything used in connection with the production of income from that real property, or adapted for use in or on it is, and at all times and for all purposes and in all proceedings, both legal and equitable, shall be regarded as, real property and part of the real property encumbered by the Deed of Trust, regardless of whether or not the same is physically attached to the Improvements. Similarly, nothing in this financing statement shall be construed to alter any of the rights of Secured Party as determined by the Deed of Trust or the priority of Secured Party's lien thereby created.  This financing statement is declared to be for the protection of Secured Party in the event any court shall at any time hold that notice of Secured Party's priority of interest in any property or interests described in the Deed of Trust must, in order to be effective against a particular class of persons, including, but not limited to, the United States Government or any of its agencies, be filed in the office where this financing statement is filed.

EXHIBIT A

DESCRIPTION OF REAL PROPERTY

All that parcel or parcels of real property located in Clark County, State of Nevada, and more particularly described as follows:

**Parcel I**

Being Lots 3-1 and a portion of Lot 10-1 as shown on that Record or Survey on file in Clark County Recorders Office, Clark County Nevada in File 105 of Surveys, Page 59, lying within the Southwest Quarter (SW ¼) of the Southwest Quarter (SW ¼) of Section 12, Township 22 South, Range 61 East, M.D.M., Clark County, Nevada, more particularly described as follows:

Commencing at the Southwest corner of said Section 12; thence North 89° 07' 01" East along the South line of said Southwest Quarter (SW ¼) of said Section 12, same being the centerline of Windmill Parkway, 280.69 feet; thence departing said south line and centerline North 00° 52' 59" West, 55.00 feet to the North right-of-way of said Windmill Parkway same being the point of beginning; thence North 00° 17' 48" East, 179.53 feet; thence North 89° 05' 53" East, 225.18 feet; thence South 00° 52' 59" East, 181.69 feet to the North right-of-way line of Windmill Parkway; thence North 89° 36' 34" West along said North right-of-way line, 95.32 feet; thence continuing along said right-of-way, South 89° 07' 01" West, 133.58 feet to the point of beginning.

Also described as Lot A-1 as shown on that Record of Survey on file in the Clark County Recorders Office, Clark County, Nevada, in File 143 of Surveys, Page 98 of Official Records.

**Parcel II:**

Being a portion of the Southwest Quarter (SW ¼) of the Southwest Quarter (SW ¼) of Section 12, Township 22 South, Range 61 East, M.D.M., Clark County, Nevada and being more particularly described as follows:

Commencing at the Southwest corner of said Section 12; thence North 89° 07' 01" East, along the South line of said Southwest Quarter of Section 12 and with the centerline of Windmill Road, a distance of 509.57 feet; thence North 00° 52' 59" West, a distance of 52.89 feet to the point of beginning; thence continuing North 00° 52' 59" West, a distance of 181.69 feet; thence North 89° 05' 53" East, a distance of 77.77 feet; thence South 00° 18' 16" West, a distance of 183.39 feet; thence North 89° 36' 34" West, a distance of 73.99 feet to the point of beginning.

Also described as remainder portion of Lot 4-1 as shown on that Record of Survey on file in the Clark County Recorders Office, Clark County, Nevada, in File 143 of Surveys, Page 98 of the Official Records.

**Parcel III:**

A portion of Lot 1 of WINDMILL – EASTERN COMMERCIAL SUBDIVISION, as recorded in Book 92 of Plats, Page 6, Official Records of Clark County, Nevada, being a portion of the South One Half (S

½) of the Southwest One Quarter (SW ¼) of the Southwest One Quarter (SW ¼) of Section 12, Township 22 South, Range 61 East, M.D.M., Clark County, Nevada, being more particularly described as follows:

Commencing at the Southwest corner of the Southwest One Quarter (SW ¼) of said Section 12; thence North 00° 18' 16" East along the West line of the Southwest One Quarter (SW ¼) of said Section 12, the same being the centerline of Eastern Avenue 664.55 feet; thence North 89° 05' 52" East, 50.03 feet to the East right-of-way line of Eastern Avenue; thence continue North 89° 05' 52" East along the North line of Lot 1 of said Map of Windmill – Eastern Commercial Subdivision, 945.78 feet; thence South 00° 00' 59" West 614.81 feet to the North right-of-way line of Windmill Lane; thence South 89° 07' 01" West along said North right-of-way of Windmill Lane; thence South 89° 07' 01" West, along said North right-of-way line of Windmill Lane, 25.19 feet; thence North 00° 18' 16" 184.77 feet; thence South 89° 05' 52" West 160.38 feet; thence South 00° 52' 40" East 184.67 feet to the North right of way line of Windmill Lane; thence South 89° 07' 01" West along said North right of way line of Windmill Lane 75.50 feet to the point of beginning; thence South 00° 52' 40" East 184.65 feet; thence South 89° 05' 52" West 155.37 feet; thence South 00° 18' 16" West 183.40 feet to the North right of way line of Windmill Lane; thence South 89° 36' 35" East along said North right of way line of Windmill Lane 55.72 feet; thence continue along said North right of way line North 89° 07' 01" East 103.45 feet to the point of beginning.

Also described as Lot 5-1 as shown on that Record of Survey in file in the Clark County Recorders Office, Clark County, Nevada, in File 105 of Surveys, Page 59 of Official Records.

Parcel IV:

Being a portion of the Southwest Quarter (SW ¼) of the Southwest Quarter (SW ¼) of Section 12, Township 22 South, Range 61 East, M.D.M., Clark County, Nevada and being more particularly described as follows:

Commencing at the Southwest Corner of said Section 12; thence North 89° 07' 01" East, along the South line of said Southwest Quarter of Section 12 and with the Centerline of Windmill Road, a distance of 742.69 feet; thence North 00° 52' 59" West, a distance of 50.00 feet to the point of beginning; thence North 00° 52; 40" West, a distance of 184.65 feet; thence North 89° 05' 53" East, a distance of 75.50 feet; thence South 00° 52' 40" West, a distance of 184.67 feet; thence North 89° 07' 01" West, a distance of 75.50 feet to the point of beginning.

Also described as remainder of a portion of Lot 10-1 as shown on that Record of Survey on file in the Clark County Recorders Office, Clark County, Nevada in File 143 of Surveys, Page 98 of Official Records.

Parcel V:

A portion of Lot 1 of WINDMILL-EASTERN COMMERCIAL SUBDIVISION, as recorded in Book 92 of Plats, Page 6 of Official Records of Clark County, Nevada, being a portion of the South Half (S ½) of the Southwest Quarter (SW ¼) of Section 12, Township 22 South, Range 61 East, M.D.M., Clark County, Nevada, being more particularly described as follows:

Commencing at the Southwest corner of the Southwest Quarter (SW ¼) of said Section 12; thence North 00° 18' 16", East, along the West line of the Southwest Quarter (SW ¼) of said Section 12, the same

being the centerline of Eastern Avenue 664.55 feet; thence North 89° 05' 52" East 50.03 feet to the East right of way line of Eastern Avenue; thence continue North 89° 05' 52" East, along North line of Lot 1 of said Map of Windmill-Eastern Commercial Subdivisions, 945.78 feet; thence South 00° 00' 59" West 614.81 feet to the North right of way line of Windmill Lane; thence South 89° 07' 01" West along said North right of way line of Windmill Lane 25.19 feet to the point of beginning; thence North 00° 18' 16" East 184.77 feet; thence South 89° 05' 52" 160.38 feet; thence South 00° 52' 40" East 184.67 feet to the North right of way line of Windmill Lane; thence South 89° 07' 01" East along said North right of way line of Windmill Lane 156.57 feet to the point of beginning.

Also described as Lot 6-1 as shown on that Record of Survey in file in the Clark County Recorders Office, Clark County, Nevada, in File 105 of Surveys, Page 59 of Official Records.

**Parcel VI:**

Being a portion of the Southwest Quarter (SW ¼) of the Southwest Quarter (SW ¼) of Section 12, Township 22 South, Range 61 East, M.D.M., Clark County, Nevada and being more particularly described as follows:

Commencing at the Southwest corner of said Section 12; thence North 89° 07' 01" East, along the South line of said Southwest Quarter of Section 12 and with the centerline of Windmill Road, a distance of 974.76 feet; thence North 00° 52' 59" West, a distance of 50.00 feet to the point of beginning; thence North 00° 18' 16" West, a distance of 184.76 feet; thence North 89° 05' 53" East, a distance of 24.15 feet; thence South 00° 00' 59" West, a distance of 184.75 feet; thence North 89° 07' 01" West, a distance of 25.08 feet to the point of beginning.

Also described as remainder portion of Lot 10-1 as shown on that Record of Survey on File in the Clark County Recorders Office, Clark County, Nevada in File 143 of Surveys, Page 98 of Official Records.

# EXHIBIT 5

# EXHIBIT 5

**COPY**

Sent to title
7-31-07

## UCC FINANCING STATEMENT
**FOLLOW INSTRUCTIONS (front and back) CAREFULLY**

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

> Bank of Nevada
> 777 North Rainbow Blvd.
> Suite #100
> Las Vegas, NV 89107
> Attn: Ms. Bo Jones

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| Windmill Market, LLC | | | | | |
| OR 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 3695 West Flamingo Road | Las Vegas | NV | 89103 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| | | Limited liability co. | Nevada | LLC26642-2004 | ☐ NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| | | | | | ☐ NONE |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| Bank of Nevada | | | | | |
| OR 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 777 North Rainbow Blvd., Suite #100 | Las Vegas | NV | 89107 | USA |

**4. This FINANCING STATEMENT covers the following collateral:**

See Schedule 1 attached hereto and Incorporated herein.

| 5. ALTERNATIVE DESIGNATION [if applicable]: | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum [if applicable] | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | | ☐ All Debtors | ☐ Debtor 1 | ☐ Debtor 2 |

8. OPTIONAL FILER REFERENCE DATA

Nevada Secretary of State

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO:   (Name and Address)

Bank of Nevada
777 North Rainbow Blvd.
Suite #100
Las Vegas, NV 89107
Attn:  Ms. Bo Jones

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| Windmill Market, LLC | | | | | |
| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | | COUNTRY |
| 3695 West Flamingo Road | Las Vegas | NV | 89103 | | USA |
| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any | |
| | | Limited liability co. | Nevada | LLC26642-2004 | ☐ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | | COUNTRY |
| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Bank of Nevada | | | | |
| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 777 North Rainbow Blvd., Suite #100 | Las Vegas | NV | 89107 | USA |

4. This FINANCING STATEMENT covers the following collateral:

See Schedule 1 attached hereto and incorporated herein.

| 5. ALTERNATIVE DESIGNATION [if applicable]: | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum | | [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]   [optional] | | ☐ All Debtors | ☐ Debtor 1 | ☐ Debtor 2 |

8. OPTIONAL FILER REFERENCE DATA

Nevada Secretary of State

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

# Instructions for UCC Financing Statement (Form UCC1)

Please type or laser-print this form. Be sure it is completely legible. Read all instructions, especially instruction 1; correct Debtor name is crucial. Follow instructions completely.

Fill in form very carefully; mistakes may have important legal consequences. If you have questions, consult your attorney. Filing office cannot give legal advice. Do not insert anything in the open space in the upper portion of this form; it is reserved for filing office use.

When properly completed, send Filing Office Copy, with required fee, to filing office. If you want an acknowledgment, complete item B and, if filing in a filing office that returns an acknowledgment copy furnished by filer, you may also send Acknowledgment Copy; otherwise detach. If you want to make a search request, complete item 7 (after reading instruction 7 below) and send Search Report Copy, otherwise detach. Always detach Debtor and Secured Party Copies.

If you need to use attachments, you are encouraged to use either Addendum (Form UCC1Ad) or Additional Party (Form UCC1AP).

A. To assist filing offices that might wish to communicate with filer, filer may provide information in item A. This item is optional.

B. Complete item B if you want an acknowledgment sent to you. If filing in a filing office that returns an acknowledgment copy furnished by filer, present simultaneously with this form a carbon or other copy of this form for use as an acknowledgment copy.

1.  Debtor name: Enter only one Debtor name in item 1, an organization's name (1a) or an individual's name (1b). Enter Debtor's exact full legal name. Don't abbreviate.

1a. Organization Debtor. "Organization" means an entity having a legal identity separate from its owner. A partnership is an organization; a sole proprietorship is not an organization, even if it does business under a trade name. If Debtor is a partnership, enter exact full legal name of partnership; you need not enter names of partners as additional Debtors. If Debtor is a registered organization (e.g., corporation, limited partnership, limited liability company), it is advisable to examine Debtor's current filed charter documents to determine Debtor's correct name, organization type, and jurisdiction of organization.

1b. Individual Debtor. "Individual" means a natural person; this includes a sole proprietorship, whether or not operating under a trade name. Don't use prefixes (Mr., Mrs., Ms.). Use suffix box only for titles of lineage (Jr., Sr., III) and not for other suffixes or titles (e.g., M.D.). Use married woman's personal name (Mary Smith, not Mrs. John Smith). Enter Individual Debtor's family name (surname) in Last Name box, first given name in First Name box, and all additional given names in Middle Name box.

For both organization and individual Debtors: Don't use Debtor's trade name, DBA, AKA, FKA, Division name, etc. in place of or combined with Debtor's legal name; you may add such other names as additional Debtors if you wish (but this is neither required nor recommended).

1c. An address is always required for the Debtor named in 1a or 1b.

1d. Reserved for Financing Statements to be filed in North Dakota or South Dakota only. If this Financing Statement is to be filed in North Dakota or South Dakota, the Debtor's taxpayer identification number (tax ID#) — social security number or employer identification number must be placed in this box.

1e,f,g. "Additional information re organization Debtor" is always required. Type of organization and jurisdiction of organization as well as Debtor's exact legal name can be determined from Debtor's current filed charter document. Organizational ID #, if any, is assigned by the agency where the charter document was filed; this is different from tax ID #; this should be entered preceded by the 2-character U.S. Postal identification of state of organization if one of the United States (e.g., CA12345, for a California corporation whose organizational ID # is 12345); if agency does not assign organizational ID #, check box in item 1g indicating "none."

Note: If Debtor is a trust or a trustee acting with respect to property held in trust, enter Debtor's name in item 1 and attach Addendum (Form UCC1Ad) and check appropriate box in item 17. If Debtor is a decedent's estate, enter name of deceased individual in item 1b and attach Addendum (Form UCC1Ad) and check appropriate box in item 17. If Debtor is a transmitting utility or this Financing Statement is filed in connection with a Manufactured-Home Transaction or a Public-Finance Transaction as defined in applicable Commercial Code, attach Addendum (Form UCC1Ad) and check appropriate box in item 18.

2.  If an additional Debtor is included, complete item 2, determined and formatted per instruction 1. To include further additional Debtors, attach either Addendum (Form UCC1Ad) or Additional Party (Form UCC1AP) and follow instruction 1 for determining and formatting additional names.

3.  Enter information for Secured Party or Total Assignee, determined and formatted per Instruction 1. To include further additional Secured Parties, attach either Addendum (Form UCC1Ad) or Additional Party (Form UCC1AP) and follow Instruction 1 for determining and formatting additional names. If there has been a total assignment of the Secured Party's interest prior to filing this form, you may either (1) enter Assignor S/P's name and address in item 3 and file an Amendment (Form UCC3) [see item 5 of that form]; or (2) enter Total Assignee's name and address in item 3 and, if you wish, also attaching Addendum (Form UCC1Ad) giving Assignor S/P's name and address in item 12.

4.  Use item 4 to indicate the collateral covered by this Financing Statement. If space in item 4 is insufficient, put the entire collateral description or continuation of the collateral description on either Addendum (Form UCC1Ad) or other attached additional page(s).

5.  If filer desires (at filer's option) to use titles of lessee and lessor, or consignee and consignor, or seller and buyer (in the case of accounts or chattel paper), or bailee and bailor instead of Debtor and Secured Party, check the appropriate box in item 5. If this is an agricultural lien (as defined in applicable Commercial Code) filing or is otherwise not a UCC security interest filing (e.g., a tax lien, judgment lien, etc.), check the appropriate box in item 5, complete items 1-7 as applicable and attach any other items required under other law.

6.  If this Financing Statement is filed as a fixture filing or if the collateral consists of timber to be cut or as-extracted collateral, complete items 1-5, check the box in item 6, and complete the required information (items 13, 14 and/or 15) on Addendum (Form UCC1Ad).

7.  This item is optional. Check appropriate box in item 7 to request Search Report(s) on all or some of the Debtors named in this Financing Statement. The Report will list all Financing Statements on file against the designated Debtor on the date of the Report, including this Financing Statement. There is an additional fee for each Report. If you have checked a box in item 7, file Search Report Copy together with Filing Officer Copy (and Acknowledgment Copy). Note: Not all states do searches and not all states will honor a search request made via this form; some states require a separate request form.

8.  This item is optional and is for filer's use only. For filer's convenience of reference, filer may enter in item 8 any identifying information (e.g., Secured Party's loan number, law firm file number, Debtor's name or other identification, state in which form is being filed, etc.) that filer may find useful.

# EXHIBIT 6

# EXHIBIT 6

Date
Opened: 09/08/2006   Term: 5 Months   Tax
ID: 20-2378534   Number: 3400016756

# Certificate of Deposit

Account Number: 3400016756

Amount of
Deposit:  Four Hundred Twenty-four Thousand Two Hundred Seventy-eight Dollars And Ninety-seven Cents    $424278.97

This Time Deposit is Issued to:   Issuer:

Nevada K LLC
Simon K Shakib

9517 CAMINO CAPISTRANO LN
LAS VEGAS       NV 89147

BANK OF NEVADA
777 N. RAINBOW BLVD.
LAS VEGAS, NV 89107

Not Negotiable - Not Transferable - Additional terms are below.

By _Ishula L Phips_

---

## Additional Terms and Disclosures

This form contains the terms for your time deposit. It is also the Truth-in-Savings disclosure for those depositors entitled to one. There are additional terms and disclosures on page two of this form, some of which explain or expand on those below. You should keep one copy of this form.

**Maturity Date:** This account matures 02/08/2007

_____ (See below for renewal information.)

**Rate Information:** The interest rate for this account is____ 5.4000 % with an annual percentage yield of _____ 5.55 %. This rate will be paid until the maturity date specified above. Interest begins to accrue on the business day you deposit any noncash item (for example, a check). Interest will be compounded Daily _____.

Interest will be credited Cycle Date to Compound _____

☒ The annual percentage yield assumes that interest remains on deposit until maturity. A withdrawal of interest will reduce earnings.

☒ If you close your account before interest is credited, you will not receive the accrued interest.

The **NUMBER OF ENDORSEMENTS** needed for withdrawal or any other purpose is: One (1) _____

**Minimum Balance Requirement:** You must make a minimum deposit to open this account of $ 1,000.00 _____.
☒ You must maintain this minimum balance on a daily basis to earn the annual percentage yield disclosed.

**Withdrawals of Interest:** Interest ☐ accrued ☒ credited during a term can be withdrawn: At anytime

**Early Withdrawal Penalty:** If we consent to a request for a withdrawal that is otherwise not permitted you may have to pay a penalty. The penalty will be an amount equal to: 30 days of interest _____

_____ interest on the amount withdrawn.

**Renewal Policy:**
☐ **Single Maturity:** If checked, this account will not automatically renew. Interest ☐ will ☐ will not  accrue after maturity.

☒ **Automatic Renewal:** If checked, this account will automatically renew on the maturity date (see page two for terms)
Interest ☒ will ☐ will not  accrue after final maturity.

---

**ACCOUNT OWNERSHIP:** You have requested and intend the type of account marked below.
☐ Individual
☐ Joint - With Survivorship (and not, as tenants in common or community property)
☐ Joint - No Survivorship (as tenants in common)
☐ Community Property Account - No Survivorship
☐ Trust: Separate Agreement Dated _____
☒ LIMITED LIABILITY

_____
_____

☐ Revocable Trust or ☐ Pay on Death Designation as defined in this agreement (Beneficiaries' names and addresses)

---

## BACKUP WITHHOLDING CERTIFICATIONS

TIN: 20-2378534
☒ **Taxpayer I.D. Number** - The Taxpayer Identification Number shown above (TIN) is my correct taxpayer identification number.

☒ **Backup Withholding** - I am not subject to backup withholding either because I have not been notified that I am subject to backup withholding as a result of a failure to report all interest or dividends, or the Internal Revenue Service has notified me that I am no longer subject to backup withholding.

☐ **Exempt Recipients** - I am an exempt recipient under the Internal Revenue Service Regulations.

**A provision for my signature, certifying under penalty of perjury that the statements checked in this section and that I am a U.S. person (including a U.S. resident alien), is contained on the first copy of this certificate.**

---

ENDORSEMENTS - SIGN ONLY WHEN YOU REQUEST WITHDRAWAL

X _____

X _____

X _____

SHAKIB000129

# EXHIBIT 7

# EXHIBIT 7

Date
Opened:   10/03/2007   Term: 5 Months

Tax
ID: 20-2378534   Number: 73105

## CERTIFICATE OF DEPOSIT COPY
## AND
## CERTIFICATE OF DEPOSIT SIGNATURE CARD

Account Number: 3400105457

Dollar
Amount of
Deposit:   Six Hundred Fifty-Five Thousand Eight Hundred Eighty-Seven Dollars And Eighteen Cents   $655,887.18

This Time Deposit is Issued to:

Nevada K LLC
Defined P Plan

9517 CAMINO CAPISTRANO LN
LAS VEGAS, NV 89147-8002

Issuer:   BANK OF NEVADA

777 N. RAINBOW BLVD.
LAS VEGAS, NV 89107

Not Negotiable - Not Transferable - Additional terms are below.

By _____

*CERTIFICATE COPY*

---

## Additional Terms and Disclosures

This form contains the terms for your time deposit. It is also the Truth-in-Savings disclosure for those depositors entitled to one. There are additional terms and disclosures on page two of this form, some of which explain or expand on those below. You should keep one copy of this form.

Maturity Date: This account matures _____ 03/03/2008 _____
_____ (See below for renewal information.)
Rate Information: The interest rate for this account is _____ 3.05 % with an annual percentage yield of _____ 3.09 %. This rate will be paid until the maturity date specified above. Interest begins to accrue on the business day you deposit any noncash item (for example, a check).
Interest will be compounded Daily _____
Interest will be credited Monthly _____

[X] The annual percentage yield assumes that interest remains on deposit until maturity. A withdrawal of interest will reduce earnings.

[X] If you close your account before interest is credited, you will not receive the accrued interest.

The NUMBER OF ENDORSEMENTS needed for withdrawal or any other purpose is: One (1) _____.

Minimum Balance Requirement: You must make a minimum deposit to open this account of $ 50,000.00 _____.
[X] You must maintain this minimum balance on a daily basis to earn the annual percentage yield disclosed.

Withdrawals of Interest: Interest [ ] accrued [X] credited during a term can be withdrawn: At anytime _____

Early Withdrawal Penalty: If we consent to a request for a withdrawal that is otherwise not permitted you may have to pay a penalty. The penalty will be an amount equal to: _____
_____
_____ interest on the amount withdrawn.

Renewal Policy:
[ ] Single Maturity: If checked, this account will not automatically renew. Interest [ ] will [ ] will not accrue after maturity.
[X] Automatic Renewal: If checked, this account will automatically renew on the maturity date. (see page two for terms)
Interest [X] will [ ] will not accrue after final maturity.

---

### ACCOUNT OWNERSHIP: You have requested and intend the type of account marked below.

[ ] Individual
[ ] Joint - With Survivorship (and not as tenants in common or community property)
[ ] Joint - No Survivorship (as tenants in common)
[ ] Community Property Account - No Survivorship
[ ] Trust: Separate Agreement Dated _____
[X] LIMITED LIABILITY _____

[ ] Revocable Trust or [ ] Pay on Death Designation as defined in this agreement (Beneficiaries' names and addresses)

### BACKUP WITHHOLDING CERTIFICATIONS

TIN: 20-2378534
[X] Taxpayer I.D. Number - The Taxpayer Identification Number shown above (TIN) is my correct taxpayer identification number.

[X] Backup Withholding - I am not subject to backup withholding either because I have not been notified that I am subject to backup withholding as a result of a failure to report all interest or dividends, or the Internal Revenue Service has notified me that I am no longer subject to backup withholding.

[ ] Exempt Recipients - I am an exempt recipient under the Internal Revenue Service Regulations.

SIGNATURE - I certify under penalties of perjury the statements checked in this section and that I am a U.S. person (including a U.S. resident alien).

X _____

DATE _____

SIGNATURES: I AGREE TO THE TERMS STATED ON PAGE ONE AND PAGE TWO.
X _____
X _____
X _____

**DEFINITIONS:** "We," "our," and "us" mean the issuer of this account and "you" and "your" mean the depositor(s). "Account" means the original certificate of deposit as well as the deposit it evidences.

**TRANSFER:** "Transfer" means any change in ownership, withdrawal rights, or survivorship rights, including (but not limited to) any pledge or assignment of this account as collateral. You cannot transfer this account without our written consent.

**PRIMARY AGREEMENT:** You agree to keep your funds with us in this account until the maturity date. (An, automatically renewable account matures at regular intervals.) You may not transfer this account without first obtaining our written consent. You must present this certificate when you request a withdrawal or a transfer.

This account is void if the deposit is made by any method requiring collection (such as a check) and the deposit is not immediately collected in full. If the deposit is made or payable in a foreign currency, the amount of the deposit will be adjusted to reflect final exchange into U.S. dollars.

We may change any term of this agreement. Rules governing changes in interest rates have been provided. For other changes we will give you reasonable notice in writing or by any other method permitted by law.

If any notice is necessary, you all agree that the notice will be sufficient if we mail it to the address listed on page one of this form. You must notify us of any change.

**WITHDRAWALS AND TRANSFERS:** Only those of you who sign the permanent signature card may withdraw funds from this account. (In appropriate cases, a court appointed representative, a beneficiary of a trust or pay-on-death account whose right of withdrawal has matured, or a newly appointed and authorized representative of a legal entity may also withdraw from this account.) The specific number of you who must agree to any withdrawal is written on page one in the section bearing the title NUMBER OF ENDORSEMENTS. This means, for example, that if two of you sign the signature card but only one endorsement is necessary for withdrawal then either of you may request withdrawal of the entire account at any time. Unless otherwise specified in writing, only one endorsement is required to withdraw funds from this account.

These same rules apply to define the names and the number of you who can request our consent to a transfer.

**PLEDGES:** Any pledge of this account (to which we have agreed) must first be satisfied before the rights of any joint account survivor, pay-on-death beneficiary or trust account beneficiary become effective. For example, if one joint tenant pledges the account for payment of a debt and then dies, the surviving joint tenant's rights in this account are subject first to the payment of the debt.

**ACCOUNT OWNERSHIP:** You intend these rules to apply to this account depending on the form of ownership and beneficiary designation, if any, specified on page 1. We make no representations as to the appropriateness or effect of the ownership and beneficiary designations, except as they determine to whom we pay the account funds.

Individual Account - Such an account is owned by one person.

Joint Account - With Survivorship (And Not As Tenants In Common or Community Property) - is an account in the name of two or more persons. Each of you intend that when you die the balance in the account (subject to any previous pledge to which we have agreed) will belong to the survivor(s). If two or more of you survive, you will own the balance in the account as joint tenants with survivorship and not as tenants in common. If the account is issued to a husband and wife, they intend that any community property in the account be transmuted (changed) into separate property and that all property in the account, including earnings, be held jointly with the right of survivorship. Upon the death of either spouse the property will vest in and belong to the surviving spouse.

Joint Account - No Survivorship (As Tenants In Common) - Such an account is owned by two or more persons but none of you intend (merely by opening this account) to create any right of survivorship in any other person. We encourage you to agree and tell us in writing of the percentage of the deposit contributed by each of you. This information will not, however, affect the "number of endorsements" necessary for withdrawal.

**Community Property Account - No Survivorship** - Such an account is issued to a husband and wife who intend that all of the property in the account, including earnings, be held as community property without right of survivorship.

**Revocable Trust and Pay-on-Death Account (subject to this agreement)** - If two or more of you create such an account, you own the account jointly with survivorship. Beneficiaries acquire the right to withdraw only if: (1) all persons creating the account die, and (2) the beneficiary is then living. If two or more beneficiaries are named and survive the death of all persons creating the account, such beneficiaries will own this account in equal shares, without right of survivorship. Any such beneficiary may withdraw all or any part of the account balance. The person(s) creating either of these account types reserves the right to: (1) change beneficiaries; (2) change account types; and (3) withdraw all or part of the deposit at any time.

**Trust Account Subject to Separate Agreement** - We will abide by the terms of any separate agreement which clearly pertains to this account and which you file with us. Any additional consistent terms stated on this form will also apply.

**SET-OFF:** You each agree that we may (without prior notice and when permitted by law) set off the funds in this account against any due and payable debt owed to us now or in the future, by any of you having the right of withdrawal, to the extent of such person's or legal entity's right to withdraw. If the debt arises from a note, "any due and payable debt" includes the total amount of which we are entitled to demand payment under the terms of the note at the time we set off, including any balance the due date for which we properly accelerate under the note. This right of set-off does not apply to this account if: (a) it is an Individual Retirement Account or other tax-deferred retirement account, or (b) the debt is created by a consumer credit transaction under a credit card plan, or (c) the debtor's right of withdrawal arises only in a representative capacity. You agree to hold us harmless from any claim arising as a result of our exercise of our right of set-off.

**BALANCE COMPUTATION METHOD:** We use the daily balance method to calculate the interest on this account. This method applies a daily periodic rate to the principal in the account each day.

**TRANSACTION LIMITATIONS:** You cannot make additional deposits to this account during a term (other than credited interest). You cannot withdraw principal from this account without our consent except on or after maturity. (For accounts that automatically renew, there is a grace period after each renewal date during which withdrawals are permitted without penalty.)

In certain circumstances, such as the death or incompetence of an account owner, the law permits, or in some cases requires, the waiver of the early withdrawal penalty. Other exceptions may also apply, for example, if this is part of an IRA or other tax-deferred savings plan.

**FOR ACCOUNTS THAT AUTOMATICALLY RENEW:** Each renewal term will be 6Months _____ , beginning on the maturity date (unless we give you reasonable notice in writing, before a maturity date, of a different term for renewal).

You must notify us in writing before, or within a 10 _____ day grace period after, the maturity date if you do not want this account to automatically renew.

Interest earned during one term that is not withdrawn during or immediately after that term is added to principal for the renewal term.

The rate for each renewal term will be determined by us on or just before the renewal date. You may call us on or shortly before the maturity date and we can tell you what the interest rate will be for the next renewal term. On accounts with terms of longer than one month we will remind you in advance of the renewal and tell you when the rate will be known for the renewal period.

See your plan disclosure if this account is part of an IRA or Keogh.

*(page 2 of 2)*

Express® ..1993 Bankers Systems, Inc., St. Cloud, MN  Form CD-AA-LAZ-NV  8/13/2006

Deposit Account
# CIP DOCUMENTATION CHECKLIST

Date: 10/04/2007          Officer: Samuel Culotta          Account #  3400105457

Customer Name(s):  Nevada K LLC

☒ Existing Customer [1]    ☐ New Customer Referral [2]    ☐ New Customer    ☐ Signer Added

Type of Entity:  LLC

Type of Business:  REAL ESTATE                    NAICS Code: 531390

CIP CUSTOMER RISK RATING (Per the CIP Customer Risk Assessment):    ☐ High Risk [3]    ☒ Low Risk
　　　　　　· Print the CIP Risk Rating Summary and send to Scanning.

---

**EXISTING CUSTOMER VERIFICATION (Required information)**

Existing Account/ Loan # :  3400016756              Date Existing Account/ Loan Opened:  09/08/2006

Name/ Title Existing Account:  NEVADA K LLC

---

**NEW CUSTOMER REFERRAL (Officer required to document length, type and transaction activities of prior relationship)**

N/A

---

**HIGH RISK ACCOUNTS**

**ALL** deposit customers, regardless of their CIP risk rating, who engage in **high risk industries**, live or conduct business in **high risk geographies** outside our local area, and all **non-resident alien** and **PEP** customers **must be reported to the BSA Officer** at deposit account opening.  For those customers, fax a copy of this form and a copy of the signature card to your BSA Officer.

---

**CUSTOMER RISK PROFILE QUESTIONNAIRE**

### OBTAIN THE FOLLOWING INFORMATION FORM ALL CUSTOMERS:

| | | | | | | |
|---|---|---|---|---|---|---|
| 1. | Dollar amount of estimated monthly CASH DEPOSITS? | | | | $  0 | |
| 2. | Dollar amount of estimated monthly CASH WITHDRAWLS? | | | | $  0 | |
| 3. | Domestic wire transfers? | ☐ Yes | ☒ No | # in _____ | # out _____ | Avg. Amt.  $_____ |
| 4. | Foreign wire transfers? | ☐ Yes | ☒ No | # in _____ | # out _____ | Avg. Amt.  $_____ |
| | | | | Country(s): _____ | | |
| 5. | Direct deposits? | ☐ Yes | ☒ No | Describe: _____ | | |
| 6. | Other ACH credits or debits? | ☐ Yes | ☒ No | Describe: _____ | | |

### OBTAIN THE FOLLOWING ADDITIONAL INFORMATION FROM BUSINESS CUSTOMERS:

| | | | | | |
|---|---|---|---|---|---|
| 7. | Gaming on premises? | ☐ Yes | ☒ No | % of revenue: _____ | |
| 8. | Cash checks for customers or employees? | ☐ Yes | ☒ No | Avg. check amount:  $_____ | |
| 9. | Sell money orders? | ☐ Yes | ☒ No | Per customer $ limit:  $_____ | |
| 10. | Perform money transfer services (e.h., Western Union, MoneyGram, etc)? | ☐ Yes | ☒ No | Per customer $ limit:  $_____ | |
| 11. | Sell phone/ gift cards? | ☐ Yes | ☒ No | Per customer $ limit:  $_____ | |
| 12. | Registered as a Money Service Business (MSB)? | ☐ Yes | ☒ No | Date registered: _____ | |

**MUST OBTAIN REQUIRED DOCUMENTATION LISTED ON MONEY SERVICE BUSINESS CHECKLIST OP-098 FROM ALL MSB CUSTOMERS PRIOR TO ACCOUNT OPENING.)**

NA-013 (02/08/07)

**THE FOLLOWING ITEMS ARE REQUIRED FOR CIP**

**Sole Proprietorship**

☐ CIP Information for owner and authorized signers

☐ Verification of Fictitious Business Name filing with Clark County Clerk's office (if business name is not identical to owner's name) www.accessclarkcounty.com/

**Corporation**

☐ Certified copy (High Risk only) or verification of filed Articles of Incorporation (Low Risk only)

☐ Verifications of Fictitious Business Name filing with Clark County Clerk's office (if applicable)

☐ List of Officers/Good Standing status from Secretary of State

☐ Corporate Resolution

☐ Certificate of Good Standing/Certificate of Qualification (if corporations is organized under the laws of another state

☐ CIP information for signatories (see CIP ID guide)

**Limited Liability Company**

☒ Certified copy (High Risk only) or verification of filed Articles of Organization (Low Risk only)

☒ LLC Authorization/Resolution

☐ Verification of Fictitious Buisness Name Filling with Clark County Clerk's office (if applicable)

☒ CIP information for signatories (see CIP ID guide)

☒ List of officers/Good Standing status from Secretary of State

**General Partnership**

☐ General Written Partnership Agreement

☐ Verification of Fictitious Business Name filling with Clark Conty Clerk's office (if applicable)

☐ Partnership Resolution of Authority

☐ CIP Information for signatories (see CIP ID guide)

**Unincorporated Association**

☐ Charter or Bylaws

☐ CIP Information for signatories (see CIP ID guides)

**Limited Partnership**

☐ Parntership Resolutoin of Authority

☐ Verification of (LOW risk only) or copy of (HIGH risk only) Certificate of Limited Partnership from Secretary of State

☐ CIP information for signatories (see CIP ID guide)

**Limited Liability Partnership**

☐ Partnership Resolution of Authority

☐ Verification of (LOW risk only) or copy of (HIGH risk only) Certificate of Limited Partnership from Secretary of State

☐ CIP information for signatories (see CIP ID guide)

☐ Operating Agreement

☐ Verification of Fictitious Business Name filing with Clark County Clerk's office (if applicable)

**Joint Venture**

☐ Joint Venture Agreement

☐ Good Standing status from Secretary of State

☐ CIP Information for signatories (see CIP ID guide)

☐ Verification of Fictitious Business Name filing with Clark County Clerk's office (if applicable)

**Family Trust**

☐ Copy of amendments (if applicable)

☐ Trustee Certification or copy of trust title page, trustee page, beneficiary page and signature page

☐ CIP Information for signatories (low risk individual)

**Individual**

☐ Address (Physical and mailing, if different)

☐ Date of Birth

☐ Identification Number (SSN for US persons, For non-resident aliens, Passport or Alien ID card and W-8BEN)

☐ Identification (refer to CIP ID Guide). Record ID type, ID number, issuer, issue date and expiration date.

*"FOR ACCOUNT TYPES NOT LISTED ABOVE, REFER TO THE CIP POLICY FOR ID REQUIREMENTS AND RECORD DOCUMENTATION OBTAINED ON CONVERSATATION LOG"*

**CONVERSATION LOG**

| Date | Conversation/ Event Summary |
|---|---|
| 10/04/2007 | EXISTING CUSTOMER OPENED NEW CD. CLOSED OLD CD'S. OPENED ACCOUNT PER SAM CULOTTA. |
|  | 1 + YR RELATIONSHIP WITH TH BANK. |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

NA-062 (02/08/02)