# EXHIBIT A

# EXHIBIT A

## AFFIDAVIT OF SIMON K. SHAKIB

SIMON K. SHAKIB, under penalties of perjury, hereby declares on this 22nd day of August, 2011 that:

1. Affiant is a Defendant in the foregoing matter and familiar with the facts and circumstances herein, and if necessary available to testify regarding the matters as mentioned herein.

2. That on December 30, 2004 Defendants, Affiant and Zanna Shakib executed the Investors Group of Nevada, LP Defined Benefit Pension Trust (the "Trust").

3. Subsequent to the Trust, an Amendment was executed which changed all the references to, "Investors Group of Nevada, LP" to "Nevada K, LLC" and the Trust was formerly renamed as the "Nevada K, LLC Defined Benefit Pension Trust." (See Amendment dated October 17, 2006, attached herein as Exhibit B) That the certificate of deposit (the "CD") held in the name of Nevada K, LLC, Defined Benefit Pension Trust is property of a pension plan governed by Early Retirement Income Security Act of 1974 ("ERISA").

4. Pursuant to the Trust the certificate of deposit could not have been pledged as collateral for any loan, including the loan subject to this litigation. That in conjunction with Bank of Nevada's agreement to fund the development of real property, the CD was allegedly pledged to secure a loan on or about July 30, 2007.

5. That prior to the execution of the loan documents Defendants provided a copy of the Trust and were aware that the CD was held in the name of the Nevada K, LLC, Defined Benefit Pension Trust. Indeed the Plaintiff would have been required by banking regulations to obtain a copy of the Trust.

6. The Pledge and Security Agreement was executed only by Simon Shakib as Manager of Nevada K, LLC and personally. (Plaintiff's Motion, Exhibit 1-H, Pg. 5)

7. The Pledge and Security Agreement was not signed by the trustees of Trust nor was the Trust a party to the Pledge and Security Agreement.

8. Affiant is also informed that there are other employees that should have been included in the pension plan and that these employees are being included to accurately reflect the obligations of the Trust to the applicable employees.

9. Bank of Nevada (the "Bank") made certain false representations to Defendants at the time the account was opened for Trust and before the loan documents and Guaranty were signed. Before the documents were signed, the Bank represented to Defendants that they would provide all the financing necessary to construct the Windmill Market Shopping Center and would provide the financing to pay for the tenant improvements, which would be necessary for the leasing of the Center.

10. These representations were false, in that the Bank did not intend to fully fund the loan as agreed and did not intend to provide the financing to pay for the tenant improvements.

11. These omissions and misrepresentations were and are material to the Defendants, because they would not have incurred the extent of risk that they did with this private lender had they known that they did not intend to fully fund the loan and pay for the tenant improvements or to reimburse the Defendants for the expense of the tenant improvements as represented both verbally and in writing to the Defendants.

12. These types of misrepresentations continued throughout the term of the loan. Specifically, upon information and belief, the Bank failed to fully fund the loan and pay for tenant improvements, which prevented the Center from entering into leases with a number of tenants during 2008 and 2009. Defendants did not know that the representations were false. Indeed, it was not until the Bank failed and refused to fully fund the loan and either pay for, or reimburse the Defendants for the tenant improvement expenses that Defendants discovered that the Bank

had misrepresented that it would fully fund the loan and pay the tenant improvement expenses.

13. Defendants suffered damages proximately caused by reliance on the false statements. Such damages consist of, *inter alia,* (a) lost past and future benefits and earnings Plaintiff would have realized had the Bank not committed the fraud; (b) lost business and investment opportunities; and (c) interest. Therefore, as a result, they should be entitled to a setoff from any alleged exposures created by the Guaranty.

Further Your Affiant Sayeth Naught.

Dated this 23rd of August, 2011.

/s/ Simon K. Shakib
SIMON K. SHAKIB