1    H. STAN JOHNSON, ESQ.
     Nevada Bar No.: 00265
2    BRIAN A. MORRIS, ESQ.
     Nevada Bar No.: 11217
3    COHEN-JOHNSON, LLC
     255 E. Warm Springs Road, Suite 100
4    Las Vegas, Nevada 89118
     Telephone: (702) 823-3500
5    Facsimile: (702) 823-3400
6    Attorneys for Defendant, Counter-Claimant and
     Third-Party Plaintiff
7

8            **UNITED STATES DISTRICT COURT**

9              **DISTRICT OF NEVADA**

10    WINDMILL & EASTERN, LLC, a Nevada )   Case No.:    2:11-CV-01082
     Limited Liability Company,              )
11                              )
12           Plaintiff,             )
     v.                              )
13                              )
     SIMON SHAKIB, an individual and as the trustee )
14    of the Nevada K, LLC Defined Pension Plan; )
     ZANNA SHAKIB, an individual and as the trustee )
15    of the Nevada K, LLC Defined Pension Plan; )
     NEVADA K, LLC, a Nevada limited liability )
16    company, and DOES I through X; and ROE )
     ENTITIES I through X, inclusive,        )
17                              )
18           Defendants.          )
19    ——————————————————— )
                               )
20    SIMON SHAKIB, an individual,      )
                               )
21          Counter-Claimant,      )
     v.                              )
22                                )
23    WINDMILL & EASTERN, LLC, a Nevada )
     Limited Liability Company; and ROE ENTITIES )
24    I through X, inclusive,        )
                               )
25          Counter-Defendants.      )
26    ——————————————————— )
                               )
27    SIMON SHAKIB, an individual; WINDMILL )
     MARKET, LLC, a Nevada corporation,    )
28                                )

| | |
|---|---|
| Third-Party Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| BANK OF NEVADA, a Nevada corporation; and | ) |
| ROE ENTITIES I through X, inclusive, | ) |
| | ) |
| Third-Party Defendants. | ) |
| ———————————————————— | ) |

## AMENDED ANSWER TO COMPLAINT

COMES NOW, Defendants, by and through his counsel of record, H. Stan Johnson, Esq., of COHEN-JOHNSON, LLC and in answer to Plaintiff's Complaint; hereby admits, denies, avers and alleges as follows:

### JURISDICTION

1.      Answering paragraph 1, 2, of Plaintiff's Complaint, Defendants state that said response calls for a legal conclusion and Defendant is therefore not obligated to respond to this allegation.

### PARTIES

2.      Answering paragraphs 3, 4, 5 and 6 of Plaintiff's Complaint, Defendants admit the allegations contained therein.

3.      Answering paragraph 7 of Plaintiff's Complaint, Defendants are without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained therein and therefore denies the same.

### STATEMENT OF FACTS

4.      Answering paragraphs 8, 15, 17 and 18 of Plaintiff's Complaint, Defendants admit the allegations contained therein.

5.      Answering paragraphs 9, 10, 11, 12, 13, 14, 19 and 20 of Plaintiff's Complaint, Defendants state that the documents referred therein speak for themselves.

**DECLARATORY RELIEF CLAIM**

6.      Answering paragraph 21 of Plaintiff's Complaint, Defendants incorporate their responses to the prior paragraphs as though fully set forth herein.

7.      Answering paragraph 22 of Plaintiff's Complaint, Defendants admit the allegations contained therein.

8.      Answering paragraphs 23, 25 and 26(b) of Plaintiff's Complaint, Defendants admit the allegations contained therein.

9.      Answering paragraph 26 of Plaintiff's Complaint, Defendants state there is no allegation which requires a response.

**AFFIRMATIVE DEFENSES**

**FIRST AFFIRMATIVE DEFENSE**

Plaintiff has engaged in conduct which constitutes a waiver of its rights under the contracts alleged in the Amended Complaint.  By reason of such waiver, Defendant is excused from further performance of the obligations under the alleged contract and indemnification, if any.

**SECOND AFFIRMATIVE DEFENSE**

Plaintiff's causes of action are barred by the doctrine of latches and waiver.

**THIRD AFFIRMATIVE DEFENSE**

The Complaint, and the factual allegations contained therein, fails to state a cause of action.

**FOURTH AFFIRMATIVE DEFENSE**

Plaintiff has unclean hands and is not entitled to the relief requested herein.

**FIFTH AFFIRMATIVE DEFENSE**

Plaintiff's action is barred by NRS 40.430.

**SIXTH AFFIRMATIVE DEFENSE**

Plaintiff's actions are barred by NRS 166.120(1).

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's action is barred for failure to comply with NRS 40.455 and 40.457

### EIGHTH AFFIRMATIVE DEFENSE

The guaranty which Plaintiff is attempting to enforce is void, as the documents are materially defective.

### NINTH AFFIRMATIVE DEFENSE

The Promissory Note and loan documents were effectively merged into the Stipulated Judgment entered in the State Court action on May 14, 2012.

### TENTH AFFIRMATIVE DEFENSE

Plaintiff is barred from relief in this matter based on the principles of res judicata, claim preclusion merger.

### ELEVENTH AFFIRMATIVE DEFENSE

This action is void as it is an attempt to perfect a "double recovery" because the full measure of damages was already awarded by virtue of the stipulated judgment.

### ELEVENTH AFFIRMATIVE DEFENSE

Defendants incorporate by reference those affirmative defenses enumerated in Rule 8 of the Nevada Rules of Civil Procedure as if fully set forth herein.  In the event further investigation or discovery reveals the applicability of such defenses, Defendants reserve the right to seek leave of Court to amend this answer to specifically assert any such defense.  Such defenses are herein incorporated by reference for the specific purpose of not waiving any such defense.

WHEREFORE, Defendants pray for judgment against Plaintiff, as follows:

1.     That Plaintiff take nothing by way of their Complaint;

2.    For attorney's fees and costs of suit herein;

3.    For such other and further relief as the Court may deem appropriate.

Dated this 13th day of December, 2013.

COHEN-JOHNSON, LLC

By:    /s/ H. Stan Johnson
       H. STAN JOHNSON, ESQ.
       Nevada Bar No. 00265
       255 E. Warm Springs Road, Suite 100
       Las Vegas, Nevada 89118
       Attorneys for Defendant, Counter-Claimant and Third-
       Party Plaintiff

## COUNTERCLAIM

COMES NOW, Counterclaimant, Simon K. Shakib, by and through his attorney, H. Stan Johnson, Esq.,of COHEN-JOHNSON, LLC and for his causes of action, alleges as follows:

## GENERAL ALLEGATIONS

1.    Bank of Nevada is a Nevada corporation and a federally chartered bank doing business in Clark County, Nevada.

2.    Windmill & Eastern, LLC is a Nevada limited liability company organized and existing under the laws of the State of Nevada and doing business in Clark County Nevada.

3.    Simon Shakib is, and at all times relevant herein was, a citizen of the State of Nevada, residing in Clark County, Nevada.

4.    Windmill Market, LLC is a Nevada limited liability company doing business in Clark County, Nevada.

1      5.      Nevada K., LLC, is a Nevada limited liability company doing business in Clark

2  County, Nevada.

3      6.      Counter-Defendants designated herein as Doe Entities are individuals and legal

4

5  entities that may be liable to Counter-Claimant for the claims set forth herein.  Counter-Claimant

6  will amend his Counterclaim to assert the true names and capacities of such Doe entities when

7  more information has been ascertained.

8      7.      That on December 30, 2004 Defendants, Simon Shakib and Zanna Shakib executed

9                  the

10  Investors Group of Nevada, LP Defined Benefit Pension Trust (the "Trust").

11      8.      Subsequent to the Trust, an Amendment was executed which changed all the

12

13  references to, "Investors Group of Nevada, LP" to "Nevada K, LLC" and the Trust was formerly

14  renamed as the "Nevada K, LLC Defined Benefit Pension Plan."

15      9.      That the certificate of deposit (the "CD") held in the name of Nevada K, LLC,

16  Defined Benefit Pension Plan is property of a pension plan governed by Early Retirement Income

17  Security Act of 1974 ("ERISA").

18      10.      Pursuant to a Promissory Note dated July 30, 2007, (the "Promissory Note") and

19

20  Construction Loan Agreement of the same date ( the "Loan Agreement"), Bank o f Nevada

21  extended a loan to Windmill Market, LLC (the "Borrower") in the principal amount of $7,000,000

22  (the "Loan").  That in conjunction with Bank of Nevada's agreement to fund the development of

23  real property, the CD was allegedly pledged to secure the Loan Agreement.

24      11.      That prior to the execution of the loan documents Defendants provided a copy of the

25

26

27

28                                  - 6 -

Trust and were aware that the CD was held in the name of the Nevada K, LLC, Defined Benefit Pension Trust.  Pursuant to the Trust the certificate of deposit could not have been pledged as collateral for any loan, including the loan subject to this litigation.

12.     Pursuant to a Construction Deed of Trust, Assignment of Rents and Leases, Security Agreement and Financing Statement dated July 30, 2007 and recorded with the Clark County Recorder's Office on or about July 31, 2007 as Instrument No. 0004271 in Book No. 20070731 (the "Deed of Trust"), the Loan was secured by six parcels of real property collectively assigned Assessor's Parcel Number 177-12-417-027 commonly known as 2550 East Windmill Lane and more fully described in Exhibit A to the Deed of Trust (the "Security").

13.     The Pledge and Security Agreement was executed only by Simon Shakib as Manager of Nevada K, LLC and personally. The Pledge and Security Agreement was not signed by the trustee of the Trust, nor was the Trust a party to the Pledge and Security Agreement.

14.     Therefore, the Pledge and Security Agreement are defective and unenforceable as against the Trust or the assets of the Trust and the execution of the pledge by parties that had no interest in the collateral did not establish a security interest in the property of the Trust.

15.     In Article XII of the Trust at Section E that provision states in part:

Spendthrift Provisions.  Except with respect to a Participant loan or a Qualified Domestic Relations Order, **neither the Employer nor the Trustee shall recognize any transfer, mortgage, pledge, hypothecation, order or assignment by any Participant or Beneficiary of all or any part of his or her interest under the Trust. Any attempt by a Participant or Beneficiary to assign, alienate, sell, transfer, pledge or encumber his or her benefits shall be void.**  A Participant's or Beneficiary's interest shall not be subject in any manner to transfer by operation of law and shall be exempt from the claims of his or her creditors or other claimants (including but not limited to, debts, contracts, liabilities or torts) from all orders decrees, levies, garnishments and/or executions and other legal or equitable process or proceedings against such Participant or Beneficiary to the full extent which may be permitted by law. (Emphasis Added)

16.     NRS 166.120(1) states:

1.   A spendthrift trust as defined in this chapter restrains and prohibits generally the assignment, alienation, acceleration and anticipation of any interest of the beneficiary under the trust by the voluntary or involuntary act of the beneficiary, or by operation of law or any process or at all. The trust estate, or corpus or capital thereof, shall never be assigned, aliened, diminished or impaired by any alienation, transfer or seizure so as to cut off or diminish the payments, or the rents, profits, earnings or income of the trust estate that would otherwise be currently available for the benefit of the beneficiary.

17.     With accumulated interest the CD is valued as of November 23, 2009 in the approximate amount of $692,568.90.

18.     Pursuant to a Letter Agreement dated February 24, 2009, Bank of Nevada agreed to extend the maturity date of the Loan to April 2, 2009.

19.     Pursuant to a second Letter Agreement dated June 19, 2009, Bank of Nevada agreed to further extend the maturity date of the Loan to July 1, 2009. The maturity date was never extended beyond that date.

20.     The Borrower thereafter defaulted under the Loan by failing to repay the Loan by its maturity date of July 1, 2009.

21.     Pursuant to the Deed of Trust, Bank of Nevada initiated non-judicial foreclosure proceedings to sell the Security at a trustee's sale.

22.     Prior to the trustee's sale, Bank of Nevada assigned all of its rights, title and interest in the Loan and the Promissory Note, Loan Agreement, Deed of Trust, Guaranty, Letter Agreements, and all other documents executed in relation to the Loan (the "Loan Documents") to Counter-Defendant, a sole-purpose entity created and wholly-owned by Bank of Nevada.

23.     Counter-Defendant, as assignee, is liable under the Loan Documents.

24.     The trustee's sale of the Security was held on July 7, 2010 where the property was purchased by Plaintiff for $3,200,000 via a credit bid.

- 8 -

1

## FIRST CLAIM FOR RELIEF

2

(Fraudulent Inducement and Continuing Fraud)

3

4

25.     Counter-Claimant incorporates and reallege the preceding paragraphs above as though fully set forth herein.

5

6

26.     Bank of Nevada (the "Bank") made certain false representations to Counter-Claimant before the loan documents and Guaranty were signed.

7

8

27.     Before the documents were signed, the Bank represented to the Counter-Claimant that they would provide all the financing necessary to construct the Windmill Market Shopping Center and would provide the financing to pay for the tenant improvements, which would be necessary for the leasing of the Center.

9

10

11

12

28.     These representations were false, in that the Bank did not intend to fully fund the loan as agreed and did not intend to provide the financing to pay for the tenant improvements.

13

14

15

29.     These omissions and misrepresentations were and are material to the Counter-Claimant because they would not have incurred the extent of risk that they did with this private lender had they known that they did not intend to fully fund the loan and pay for the tenant improvements or to reimburse the Counter-Claimant for the expense of the tenant improvements as represented both verbally and in writing to the Counter-Claimant.

16

17

18

19

20

21

30.     These types of misrepresentations continued throughout the term of the loan. Specifically, upon information and belief, the Bank failed to fully fund the loan and pay for tenant improvements, which prevented the Center from entering into leases with a number of tenants during 2008 and 2009.

22

23

24

25

31.     Counter-Claimant did not know that the representations were false. Indeed, it was not

26

27

28

1  until the Bank failed and refused to fully fund the loan and either pay for, or reimburse the Counter-

2  Claimant for the tenant improvement expenses that Counter-Claimant discovered that the Bank had

3  misrepresented that it would fully fund the loan and pay the tenant improvement expenses.

4

5       32.    The Bank intended for Counter-Claimant to rely upon its communications and act

6  upon them in a manner reasonably contemplated.

7       33.    Counter-Claimant relied upon the truth of the statements and Counter-Claimant's

8  reliance was reasonable under all the circumstances.

9       34.    Counter-Claimant suffered damages proximately caused by reliance on the false

10 statements. Such damages consist of, *inter alia,* (a) lost past and future benefits and earnings Plaintiff

11 would have realized had the Bank not committed the fraud; (b) lost business and investment

12 opportunities; and (c) interest. Therefore, as a result, they should be entitled to a setoff from any

13

14 alleged exposures created by the Guaranty.

15      35.    In addition, Counter-Claimant is entitled to recover costs of this suit, including

16 reasonable attorney fees.

17                    **SECOND CLAIM FOR RELIEF**

18           (Breach of the Implied Covenant of Good Faith and Fair Dealing)

19

20      36.    Counter-Claimant incorporates and reallege the preceding paragraphs above as

21 though fully set forth herein.

22      37.    In every contract, including the Loan Documents, each party makes an implied

23 covenant of good faith and fair dealing to the other.

24      38.    Through the actions complained of herein, the Counter-Defendants have wrongfully

25 breached and continue to breach said covenant of good faith and fair dealing.

26      39.    As a direct and proximate result of the Counter-Defendants breaches of the implied

27

28                              - 10 -

1    covenant of good faith and fair dealing, Counter-Claimant has been damaged in a substantial sum in

2    excess of $10,000.

3                              **THIRD CLAIM FOR RELIEF**

4                                   (Abuse of Process)

5

6        40.    Counter-Claimant incorporates and reallege the preceding paragraphs above as

7    though fully set forth herein.

8        41.    That Counter-Defendant has an ulterior motive for bringing suit against Defendants;

9    specifically to recoup payment from a guaranty which is premised on documentation which is void

10   or otherwise unenforceable.

11       42.    That the Trust does not allow the collateral to be subject to alienation, that the

12   guaranty is further voided by NRS 166.120(1), the the documents purporting to provide Counter-

13   Defendant a security interest in the CD was executed by Simon Shakib individually and not both

14

15   Trustees of the Trust, nor was the other Trustee permitted to dispute this violative cause of action.

16       43.    That Counter-Defendant knew or reasonably should have known that the

17   documents were void or of no effect, as it was provided with a copy of the Trust prior to the execution

18   of Loan Agreement.

19

20       44.    Counter-Defendant's continued use of legal proceedings in spite of not having a

21   valid guaranty or claim to the CD is a willful use of the legal process which is not proper and should

22   not be permitted.

23       45.    That the clear and undisputed factual circumstances in this matter that are known

24   by Counter-Defendant, establish they have no basis by which to assert a claim; yet have continued the

25   prosecution of this matter despite such knowledge.

26       46.    As a direct and proximate result of the Counter-Defendant's abuse of process,

27

28                                        - 11 -

Counter-Claimant has been damaged in a substantial sum in excess of $10,000.

47.     As a direct result of the actions of the Counter-Defendant, Counter-Claimant is entitled to punitive damages, attorney's fees and costs for being compelled to prosecute this matter.

### FOURTH CLAIM FOR RELIEF

#### (Mistake)

48.     Counter-Claimant incorporates and reallege the preceding paragraphs above as though fully set forth herein.

49.     To the extent that Counter-Claimants and parties herein and parties herein had any agreement concerning the guaranties, at the time of entering into those agreement, Counter-Claimants and Bank of Nevada shared a misconception regarding a basic assumption or vital fact upon which the agreement was based.  That mistake revolved around the approval of the loan based upon the pledge of the Defendants' benefit plan CD.

50.     Alternatively, at the time of entering into the guaranties, Counter-Claimants made a unilateral mistake regarding a material term of the agreement.  That mistake was based on Bank of Nevada's approval of the loan based on a prohibited transaction and with the wrong party.  Plaintiff was then aware of Counter-Claimants unilateral mistake and took advantage of it by accepting guaranties without disclosing that the Pledge was a prohibited transaction and was with the wrong party.

51.     As a direct and proximate result of the conduct as stated above, Counter-Claimants are entitled to and hereby do rescind any form of guaranty.  In addition, Counter-Claimants are entitled to recover costs of this suit, including reasonable attorneys' fees and costs.

### FIFTH CLAIM FOR RELIEF

#### (Promissory and Quasi Estoppel)

- 12 -

52.     Counter-Claimant incorporates and reallege the preceding paragraphs above as though fully set forth herein.

53.     The guarantors relied to their detriment on Bank of Nevada assurances and promises that they would fund the entire amount of the loan including that portion of the loan to pay for tenant improvements and that the loan was properly approved subject to full disclosure and not based on a prohibited transaction and invalid pledge.

54.     These assurances and promises created a substantial economic detriment to the guarantors because they entered guaranties that exposed them to much more financial risk that they were willing to take when this loan was funded.

55.     This reliance was and should have been foreseeable in light of the communications described above and the knowledge the lender had at the time regarding the Pledge and prohibited nature of the transaction.

56.     In addition, the guarantors reliance was reasonable and justified given that Bank of Nevada was in the business of evaluating collateral of this nature and approved the loan based on what was partially a prohibited transaction.

57.     As a result, Counter-Defendants is estopped from enforcing the guaranty and the guarantors should be entitled to rescind their guaranties.

## SIXTH CLAIM FOR RELIEF

(Quasi Estoppel)

58.     Counter-Claimant incorporates and reallege the preceding paragraphs above as though fully set forth herein.

59.     Bank of Nevada's delay in its payments of tenant improvements and reimbursements,

while the market continued to decline, and its propensity to change its required terms, resulted in the guarantors being exposed to potential significant deficiencies for which they never bargained for in this financing arrangment.

60.     Counter-Defendants  gained an advantage because it is now claiming that it was entitled to foreclose on the property and obtain significant funds from the guarantors.  Should Counter-Defendant and Bank of Nevada acted appropriately and in good faith, a deficiency would have been avoided.

61.     This reliance was and should have been foreseeable and reasonable in light of the factual circumstances of this matter.

62.     In addition, the guarantors reliance was reasonable and justified given that Bank of Nevada was in the business of evaluating collateral of this nature and approved the loan based on what was partially a prohibited transaction.

63.     As a result, Counter-Defendant is estopped from enforcing the guaranty and the guarantors should be entitled to rescind their guaranties.

WHEREFORE, Counter-Claimant prays for judgment against Counter-Defendant, as follows:

1.     For compensatory damages in a sum according to proof at trial;

2.     For exemplary damages in a sum according to proof at trial;

3.     For punitive damages in a sum according to proof at trial;

4.     For special damages in a sum according to proof at trial;

5.     For interest and pre-judgment interest at the statutory rate until the amount of judgment is paid in full;

6.     For attorney's  fees and costs of suit herein;

7.     For an award of consequential damages in the amount of $50,000.00;

8.     For a judicial determination that the collateral of the Nevada K, LLC, Defined Benefit Pension Plan and 401(k) is governed by ERISA and that any assets are non-executable and ineligible to be pledged;

9.     For such other and further relief as the Court may deem appropriate.

Dated this 13th day of December, 2013.

COHEN-JOHNSON, LLC

By:     ___/s/ H. Stan Johnson_____
H. STAN JOHNSON, ESQ.
Nevada Bar No. 00265
255 E. Warm Springs Road, Suite 100
Las Vegas, Nevada 89118
Attorneys for Defendant, Counter-Claimant, and
Third-Party Plaintiffs

## THIRD-PARTY COMPLAINT

COMES NOW, Third-Party Plaintiffs, Simon K. Shakib and Windmill Market, LLC, by and through their attorney, H. Stan Johnson, Esq.,of COHEN-JOHNSON, LLC and for his causes of action, allege as follows:

## GENERAL ALLEGATIONS

1.     Third-Party Defendant Bank of Nevada is a Nevada corporation and a Federally Chartered Bank doing business in Clark County, Nevada.

2.     Windmill & Eastern, LLC, is a Nevada limited liability company organized and existing under the laws of the State of Nevada and doing business in Clark County Nevada.

3.     Third-Party Plaintiff Simon Shakib is, and at all times relevant herein was, a citizen of the State of Nevada, residing in Clark County, Nevada.

- 15 -

1    4.    Third-Party Plaintiff Windmill Market, LLC, is a Nevada limited liability company

2 doing business in Clark County, Nevada.

3    5.    Nevada K. LLC, is a Nevada limited liability company doing business in Clark

4 County, Nevada.

5

6    6.    Third-Party Defendants designated herein as Doe Entities are individuals and legal

7 entities that may be liable to Third-Party Plaintiff for the claims set forth herein.  Third-Party

8 Plaintiffs will amend their Third-Party Complaint to assert the true names and capacities of such

9 Doe entities when more information has been ascertained.

10    7.    That on December 30, 2004 Defendants, Simon Shakib and Zanna Shakib executed

11 the Investors Group of Nevada, LP Defined Benefit Pension Trust (the "Trust").

12    8.    Subsequent to the Trust, an Amendment was executed which changed all the

13 references to, "Investors Group of Nevada, LP" to "Nevada K, LLC" and the Trust was formerly

14 renamed as the "Nevada K, LLC Defined Benefit Pension Plan."

15

16    9.    That the certificate of deposit (the "CD") held in the name of Nevada K, LLC,

17 Defined Benefit Pension Plan is property of a pension plan governed by Early Retirement Income

18 Security Act of 1974 ("ERISA").

19    10.    Pursuant to a Promissory Note dated July 30, 2007, (the "Promissory Note") and

20 Construction Loan Agreement of the same date ( the "Loan Agreement"), Bank o f Nevada

21 extended a loan to Windmill Market, LLC (the "Borrower") in the principal amount of $7,000,000

22 (the "Loan").  That in conjunction with Bank of Nevada's agreement to fund the development of

23

24 real property, the CD was allegedly pledged to secure the Loan Agreement.

25    11.    That prior to the execution of the loan documents Defendants provided a copy of the

26

27

28    - 16 -

Trust and were aware that the CD was held in the name of the Nevada K, LLC, Defined Benefit Pension Trust. Pursuant to the Trust the certificate of deposit could not have been pledged as collateral for any loan, including the loan subject to this litigation.

12.     Pursuant to a Construction Deed of Trust, Assignment of Rents and Leases, Security Agreement and Financing Statement dated July 30, 2007 and recorded with the Clark County Recorder's Office on or about July 31, 2007 as Instrument No. 0004271 in Book No. 20070731 (the "Deed of Trust"), the Loan was secured by six parcels of real property collectively assigned Assessor's Parcel Number 177-12-417-027 commonly known as 2550 East Windmill Lane and more fully described in Exhibit A to the Deed of Trust (the "Security").

13.     The Pledge and Security Agreement was executed only by Simon Shakib as Manager of Nevada K, LLC and personally. The Pledge and Security Agreement was not signed by the trustee of the Trust, nor was the Trust a party to the Pledge and Security Agreement.

14.     Therefore, the Pledge and Security Agreement are defective and unenforceable as against the Trust or the assets of the Trust and the execution of the pledge by parties that had no interest in the collateral did not establish a security interest in the property of the Trust.

15.     In Article XII of the Trust at Section E that provision states in part:

Spendthrift Provisions. Except with respect to a Participant loan or a Qualified Domestic Relations Order, **neither the Employer nor the Trustee shall recognize any transfer, mortgage, pledge, hypothecation, order or assignment by any Participant or Beneficiary of all or any part of his or her interest under the Trust. Any attempt by a Participant or Beneficiary to assign, alienate, sell, transfer, pledge or encumber his or her benefits shall be void.** A Participant's or Beneficiary's interest shall not be subject in any manner to transfer by operation of law and shall be exempt from the claims of his or her creditors or other claimants (including but not limited to, debts, contracts, liabilities or torts) from all orders decrees, levies, garnishments and/or executions and other legal or equitable process or proceedings against such Participant or Beneficiary to the full extent which may be permitted by law.  (Emphasis Added)

16.     NRS 166.120(1) states:

1.   A spendthrift trust as defined in this chapter restrains and prohibits generally the assignment, alienation, acceleration and anticipation of any interest of the beneficiary under the trust by the voluntary or involuntary act of the beneficiary, or by operation of law or any process or at all. The trust estate, or corpus or capital thereof, shall never be assigned, aliened, diminished or impaired by any alienation, transfer or seizure so as to cut off or diminish the payments, or the rents, profits, earnings or income of the trust estate that would otherwise be currently available for the benefit of the beneficiary.

17.    With accumulated interest the CD is valued as of November 23, 2009 in the approximate amount of $692,568.90.

18.    Pursuant to a Letter Agreement dated February 24, 2009, Bank of Nevada agreed to extend the maturity date of the Loan to April 2, 2009.

19.    Pursuant to a second Letter Agreement dated June 19, 2009, Bank of Nevada agreed to further extend the maturity date of the Loan to July 1, 2009. The maturity date was never extended beyond that date.

20.    The Borrower thereafter defaulted under the Loan by failing to repay the Loan by its maturity date of July 1, 2009.

21.    Pursuant to the Deed of Trust, Bank of Nevada initiated non-judicial foreclosure proceedings to sell the Security at a trustee's sale.

22.    Prior to the trustee's sale, Bank of Nevada assigned all of its rights, title and interest in the Loan and the Promissory Note, Loan Agreement, Deed of Trust, Guaranty, Letter Agreements, and all other documents executed in relation to the Loan (the "Loan Documents") to Counter-Defendant, a sole-purpose entity created and wholly-owned by Bank of Nevada.

23.    Third-Party Defendant, as assignor, is liable under the Loan Documents.

24.    The trustee's sale of the Security was held on July 7, 2010 where the property was purchased by Plaintiff for $3,200,000 via a credit bid.

- 18 -

**FIRST CLAIM FOR RELIEF**

(Fraudulent Inducement and Continuing Fraud)

25.    Third-Party Plaintiffs incorporate and reallege the preceding paragraphs above as though fully set forth herein.

26.    Third-Party Defendant Bank of Nevada (the "Bank") made certain false representations to Third-Party Plaintiffs before the loan documents and Guaranty were signed.

27.    Before the documents were signed, the Bank represented to the Third-Party Plaintiffs that they would provide all the financing necessary to construct the Windmill Market Shopping Center and would provide the financing to pay for the tenant improvements, which would be necessary for the leasing of the Center.

28.    These representations were false, in that the Bank did not intend to fully fund the loan as agreed and did not intend to provide the financing to pay for the tenant improvements.

29.    These omissions and misrepresentations were and are material to the Third-Party Plaintiffs because they would not have incurred the extent of risk that they did with this private lender had they known that they did not intend to fully fund the loan and pay for the tenant improvements or to reimburse the Third-Party Plaintiffs for the expense of the tenant improvements as represented both verbally and in writing to the Third-Party Plaintiffs.

30.    These types of misrepresentations continued throughout the term of the loan. Specifically, upon information and belief, the Bank failed to fully fund the loan and pay for tenant improvements, which prevented the Center from entering into leases with a number of tenants during 2008 and 2009.

31.    Third-Party Plaintiffs did not know that the representations were false. Indeed, it was

not until the Bank failed and refused to fully fund the loan and either pay for, or reimburse the Third-Party Plaintiffs for the tenant improvement expenses that Third-Party Plaintiffs discovered that the Bank had misrepresented that it would fully fund the loan and pay the tenant improvement expenses.

32.     The Bank intended for Third-Party Plaintiffs to rely upon its communications and act upon them in a manner reasonably contemplated.

33.     Third-Party Plaintiffs did rely upon the truth of the statements and Third-Party Plaintiff's reliance was reasonable under all the circumstances.

34.     Third-Party Plaintiffs suffered damages proximately caused by reliance on the false statements. Such damages consist of, *inter alia,* (a) lost past and future benefits and earnings Plaintiff would have realized had the Bank not committed the fraud; (b) lost business and investment opportunities; and (c) interest. Therefore, as a result, they should be entitled to a setoff from any alleged exposures created by the Guaranty.

35.     In addition, Third-Party Plaintiffs are entitled to recover costs of this suit, including reasonable attorney fees.

## SECOND CLAIM FOR RELIEF

(Breach of the Implied Covenant of Good Faith and Fair Dealing)

36.     Third-Party Plaintiffs incorporate and reallege the preceding paragraphs above as though fully set forth herein.

37.     In every contract, including the Leases and Guaranties, each party makes an implied covenant of good faith and fair dealing to the other.

38.     Through the actions complained of herein, Third-Party Defendant has wrongfully breached and continues to breach said covenant of good faith and fair dealing.

39.     As a direct and proximate result of Third-Party Defendant's breaches of the implied

covenant of good faith and fair dealing, Plaintiffs have been damaged in a substantial sum in excess of $10,000.

### THIRD CLAIM FOR RELIEF

(Abuse of Process)

40.     Third-Party Plaintiffs incorporate and reallege the preceding paragraphs above as though fully set forth herein.

41.     That Third-Party Defendants have an ulterior motive for bringing suit against Defendants; specifically to recoup payment from a guaranty which is premised on documentation which is void or otherwise unenforceable.

42.     That the Trust does not allow the collateral to be subject to alienation, that the guaranty is further voided by NRS 166.120(1), the the documents purporting to provide Third-Party Defendants a security interest in the CD was executed by Simon Shakib individually and not both Trustees of the Trust, nor was the other Trustee permitted to dispute this violative cause of action.

43.     That Third-Party Defendants knew or reasonably should have known that the documents were void or of no effect, as Bank of Nevada was provided with a copy of the Trust prior to the execution of Loan Agreement.

44.     Third-Party Defendants continued use of legal proceedings in spite of not having a valid guaranty or claim to the CD is a willful use of the legal process which is not proper and should not be permitted.

45.     That the clear and undisputed factual circumstances in this matter that are known by Third-Party Defendants, establish they have no basis by which to assert a claim; yet have continued the prosecution of this matter despite such knowledge.

46.     As a direct and proximate result of the Third-Party Defendants abuse of process,

- 21 -

1    Third-Party Plaintiffs have been damaged in a substantial sum in excess of $10,000.

2        47.    As a direct result of the actions of the Third-Party Defendants, Third-Party Plaintiffs

3    are entitled to punitive damages, attorney's fees and costs for being compelled to prosecute this

4    matter.

5

6                        **FOURTH CLAIM FOR RELIEF**

7                                (Mistake)

8        48.    Third-Party Plaintiffs incorporate and reallege the preceding paragraphs above as

9    though fully set forth herein.

10       49.    To the extent that Third-Party Plaintiffs and Third-Party Defendants had any

11   agreement concerning the guaranties, at the time of entering into those agreement, Third-Party

12   Plaintiffs and Bank of Nevada shared a misconception regarding a basic assumption or vital fact upon

13   which the agreement was based.  That mistake revolved around the approval of the loan based upon

14   the pledge of the Defendants' benefit plan CD.

15

16       50.    Alternatively, at the time of entering into the guaranties, Third-Party Plaintiffs made

17   a unilateral mistake regarding a material term of the agreement.  That mistake was based on Bank of

18   Nevada's approval of the loan based on a prohibited transaction and with the wrong party.  Plaintiff

19   was then aware of Third-Party Plaintiffs unilateral mistake and took advantage of it by accepting

20   guaranties without disclosing that the Pledge was a prohibited transaction and was with the wrong

21   party.

22

23       51.    As a direct and proximate result of the conduct as stated above, Third-Party Plaintiffs

24   are entitled to and hereby do rescind any form of guaranty.  In addition, Third-Party Plaintiffs are

25   entitled to recover costs of this suit, including reasonable attorneys' fees and costs.

26

27

28                                - 22 -

**FIFTH CLAIM FOR RELIEF**

(Promissory and Quasi Estoppel)

52.    Third-Party Plaintiffs incorporate and reallege the preceding paragraphs above as though fully set forth herein.

53.    The guarantors relied to their detriment on Bank of Nevada assurances and promises that they would fund the entire amount of the loan including that portion of the loan to pay for tenant improvements and that the loan was properly approved subject to full disclosure and not based on a prohibited transaction and invalid pledge.

54.    These assurances and promises created a substantial economic detriment to the guarantors because they entered guaranties that exposed them to much more financial risk that they were willing to take when this loan was funded.

55.    This reliance was and should have been foreseeable in light of the communications described above and the knowledge the lender had at the time regarding the Pledge and prohibited nature of the transaction.

56.    In addition, the guarantors reliance was reasonable and justified given that Bank of Nevada was in the business of evaluating collateral of this nature and approved the loan based on what was partially a prohibited transaction.

57.    As a result, Third-Party Defendants are estopped from enforcing the guaranty and the guarantors should be entitled to rescind their guaranties.

**SIXTH CLAIM FOR RELIEF**

(Quasi Estoppel)

58.    Third-Party Plaintiffs incorporate and reallege the preceding paragraphs above as though fully set forth herein.

59.     Bank of Nevada's delay in its payments of tenant improvements and reimbursements, while the market continued to decline, and its propensity to change its required terms, resulted in the guarantors being exposed to potential significant deficiencies for which they never bargained for in this financing arrangment.

60.     Third-Party Defendants gained an advantage because it is now claiming that it was entitled to foreclose on the property and obtain significant funds from the guarantors.  Had Third-Party Defendants acted appropriately and in good faith, a deficiency would have been avoided.

61.     This reliance was and should have been foreseeable and reasonable in light of the factual circumstances of this matter.

62.     In addition, the guarantors reliance was reasonable and justified given that Bank of Nevada was in the business of evaluating collateral of this nature and approved the loan based on what was partially a prohibited transaction.

63.     As a result, Third-Party Defendants are estopped from enforcing the guaranty and the guarantors should be entitled to rescind their guaranties.

WHEREFORE, Third-Party Plaintiff prays for judgment against Third-Party Defendants, as follows:

1.      For compensatory damages in a sum according to proof at trial;

2.      For exemplary damages in a sum according to proof at trial;

3.      For punitive damages in a sum according to proof at trial;

4.      For special damages in a sum according to proof at trial;

5.      For interest and pre-judgment interest at the statutory rate until the amount of judgment is paid in full;

6.      For attorney's fees and costs of suit herein;

7.  For an award of consequential damages in the amount of $50,000.00;

8.  For a judicial determination that the collateral of the Nevada K, LLC, Defined Benefit Pension Plan and 401(k) is governed by ERISA and that any assets are non-executable and ineligible to be pledged; and

9.  For such other and further relief as the Court may deem appropriate.

Dated this 13th day of December, 2013.

COHEN-JOHNSON, LLC

By:      /s/ H. Stan Johnson
         H. STAN JOHNSON, ESQ.
         Nevada Bar No. 00265
         255 E. Warm Springs Road, Suite 100
         Las Vegas, Nevada 89118
         Attorneys for Defendant, Counter-Claimant, and
         Third-Party Plaintiffs

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 13th day of December, 2013 a true and correct copy of the foregoing **AMENDED ANSWER TO COMPLAINT, COUNTERCLAIM and THIRD PARTY COMPLAINT** was served by placing a copy thereof in the US Mail at Las Vegas, Nevada, with proper postage prepaid, addressed to the following:

Doreen Spears Hartwell, Esq.
LIONEL SAWYER & COLLINS
1700 Bank of America Plaza
300 South Fourth Street
Las Vegas. Nevada 89101
Attorneys for Plaintiff

                    /s/ Jenn Alexy                    .
              An employee of COHEN-JOHNSON, LLC